IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| JOHN FITZGERALD FREEMAN, | : | |
| Plaintiff | : | |
| VS. | : | 7 : 04-CV-32 (HL) |
| DOCTOR LEBEDOVYCH, | : | |
| Defendant. | : | |

**RECOMMENDATION**

Presently pending in this § 1983 action are motions for summary judgment filed by the plaintiff and the defendant. In regard to the defendant's motion, the undersigned notified the plaintiff of the filing of the defendant's motion, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of his receipt of the court's order.

*Background*

The plaintiff filed his complaint in April 2004, raising claims of deliberate indifference to his serious medical needs. Specifically, the plaintiff maintains that on January 28, 2003, while he was confined at Valdosta State Prison, he was seen by defendant Dr. Lebedovych and reported hearing voices that told him he (the plaintiff) must die. Dr. Lebedovych reduced the dosage of Risperdal, one of plaintiff's medications which according to plaintiff was administered for the control of hallucinations, and dismissed him. The plaintiff maintains that Dr. Lebedovych disregarded his complaints and refused to acknowledge his condition. On February 1, 2003, the plaintiff cut his left wrist with a razor in what the plaintiff has called a suicide attempt. On or

about February 3, 2003, the dosage of Risperdal was restored to its prior level by Nurse Cynthia Brown, and this order was upheld by Dr. Lebedovych on February 7, 2003.

*Standard of review*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party, although the nonmoving party may not rest on the pleadings but must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); Van T. Junkins & Assoc. v. U.S. Industries, Inc., 736 F.2d 656, 658 (11th Cir. 1984).

As the party moving for summary judgment, the defendant has the initial burden to demonstrate that no genuine issue of material fact remains in this case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Clark v. Coats & Clark, Inc., 929 F.2d 604 (11th Cir. 1991).  Dr. Lebedovych has supported his summary judgment motion with his affidavit and the relevant portions of plaintiff's prison medical record.

*Deliberate indifference*

It is well established that prison personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  The Eleventh Circuit has acknowledged that "the deliberate indifference standard also applies to inmates' psychiatric or mental health needs."  Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); Hardin v. Hayes, 52 F.3d 934, 939 (11th Cir.

1995) (plaintiff must show that defendant acted with deliberate indifference to a serious mental need to establish liability under § 1983).

Pursuant to the Supreme Court's dictates in Farmer v. Brennan, 511 U.S. 825 (1994), "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Id. at 837-38. "[I]n a prison suicide case, deliberate indifference requires that the defendant deliberately disregard 'a strong likelihood rather than a mere possibility that the self-infliction of harm will occur.'" McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

The defendant's affidavit and plaintiff's medical records set forth the following treatment timeline for the plaintiff. In June 2001, upon his entry into the custody of the Georgia Department of Corrections, the plaintiff was examined by Dr. Paul Beecham, a psychiatrist at the Georgia Diagnostic and Classification Prison ("GDCP"). Dr. Beecham issued alternative diagnoses of major depression with psychotic features or schizoaffective disorder, depressed type. The plaintiff was transferred to Valdosta State Prison ("VSP") in November 2001, and was initially examined by psychiatrist Dr. Briccio Valdez. Dr. Valdez also diagnosed plaintiff as suffering from major depressive disorder with psychotic features and polysubstance dependence and continued his medications as previously prescribed, to wit, Risperdal, Geodon, Atarax, and Desyrel. In addition to being seen by mental health counselors, the plaintiff met with Dr. Valdez

on at least ten (10) occasions between November 2001 and August 2002. Throughout the period of his current incarceration, beginning with his confinement at GDCP and continuing through his confinement at VSP, the plaintiff's medical records reveal his repeated reports of hearing voices and depression.

Dr. Lebedovych began his duties as a psychiatrist on staff at VSP in 2002 and first met with the plaintiff on October 23, 2002. Dr. Lebedovych reviewed the plaintiff's medication regimen, and although he questioned the plaintiff's continued reports of hearing voices and felt that the Risperdal dosage was too high, Dr. Lebedovych continued plaintiff's drug regimen as it had been set by his predecessor Dr. Valdez. Plaintiff was to see Dr. Lebedovych in eight (8) weeks, seeing his mental health counselor in the interim. During this period of time between October 23, 2002 and January 28, 2003, plaintiff reported certain side effects associated with his medications, including a tight jaw.

On January 28, 2003, the plaintiff was again seen by Dr. Lebedovych. Although no treatment notes detail this visit, Dr. Lebedovych's order sheet and affidavit testimony establish that the plaintiff was again reporting hearing voices and that the doctor decreased certain medications, including Risperdal from 3 mg to 2 mg, and adding another medication. Dr. Lebedovych states that he

> decided to lower the dosage of Risperdal [because] I felt the 3 mg dose was high for Mr. Freeman and was not giving him the desired stability and freedom from hallucinations. To the contrary, my review of his prior mental health treatment records showed that while he had been on the 3 mg Risperdal dose throughout his incarceration at the DOC, Mr. Freeman had numerous problems with hearing voices, paranoia and insomnia. Thus, it was my professional opinion that this relatively high dose of Risperdal was not working for the patient, and my goal was to add back the combination of

> Geodon which seemed to have kept him stable in the past. In addition, Mr. Freeman's continued insistence on controlling his own dose of medication, including the Risperdal, plus his past history of substance abuse led me to believe that he was drug seeking. Mr. Freeman firmly believed that the 3 mg Risperdal dose was what he needed despite the fact that his medical records belied this assertion. I made the decision based on my professional judgment to decrease the Risperdal and add in the Geodon based on my assessment of his condition and history. I did not believe that Mr. Freeman was at risk of self harm from this slight decrease in the Risperdal dose.

Lebedovych affidavit at ¶ 37.

The plaintiff met with his mental health counselor on January 29, 2003, and reported no problems. On February 1, 2003, the plaintiff cut his left wrist and was placed in the prison's Acute Care Unit. According to plaintiff's medical records, the cut resulted in only a minor laceration. On February 3, 2003, nurse specialist Cynthia Brown evaluated the plaintiff and increased his Risperdal dosage to 3 mg. This dosage was approved by Dr. Lebedovych on February 7, 2003. Although the plaintiff continued on this dosage until at least May 2003, he continued to report auditory hallucinations. The plaintiff was last treated by Dr. Lebedovych on May 1, 2003.

In response to the defendant's motion for summary judgment and in support of his own motion for summary judgment, the plaintiff has submitted his affidavit and various portions of his medical file. The facts surrounding the incidents underlying this lawsuit are not in dispute; both Dr. Lebedovych and the plaintiff agree that on the date in question, January 28, 2003, Dr. Lebedovych reduced plaintiff's Risperdal dosage from 3 mg to 2 mg and that on February 1, 2003, the plaintiff cut his wrist. Both the plaintiff and defendant agree that the plaintiff, throughout his incarceration at VSP and other facilities during the time period in question,

reported auditory hallucinations and depression.

     Viewing all facts and reasonable inferences therefrom in the light most favorable to the plaintiff, plaintiff's allegations against Dr. Lebedovych amount to nothing more than a claim for medical malpractice. To the extent that the plaintiff disagrees with the course of treatment provided by the defendant, such disagreement over the proper course of medical treatment will not support a claim of deliberate indifference. "Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." Harris v. Thigpen, 941 F.2d at 1505 (citations omitted).

     Furthermore, the plaintiff has failed to establish that Dr. Lebedovych was aware of yet disregarded a substantial risk of serious harm to the plaintiff in terms of his diagnoses and/or treatment of the plaintiff. There is no direct or circumstantial evidence that Dr. Lebedovych knew of a substantial risk of serious harm to the plaintiff as a result of his decision to decrease plaintiff's Risperdal dosage from 3 mg to 2 mg. See Campbell v. Sikes, 169 F.3d 1353 (11th Cir. 1999) (With no direct or circumstantial evidence in the record as to psychiatrist's actual knowledge of substantial risk of serious harm, the plaintiff failed to establish the required subjective mental intent under Farmer). Prior to reducing plaintiff's Risperdal dosage on January 28, 2003, Dr. Lebedovych had seen the plaintiff on at least two (2) other occasions, to wit October 23, 2002, and December 23, 2002. After his first examination of the plaintiff in October 2002 and after reviewing plaintiff's history and medication regimen, Dr. Lebedovych left plaintiff's dosages intact, despite his belief that certain doses were too high. Dr. Lebedovych's

affidavit testimony establishes that he continued to believe that plaintiff's Risperdal dosage was too high and chose to reduce this dosage on January 28, 2003, in an attempt to stabilize the plaintiff's symptoms.  Cf. Greason v. Kemp, 891 F.2d 829 (11th Cir. 1990) (genuine issues of material fact remained when prison psychiatrist completely discontinued anti-depression medication).  Plaintiff continued to see his mental health counselor in the interim following the reduction of Risperdal dosage, and as the defendant points out, plaintiff's auditory hallucinations had persisted even when he was taking the higher dosage of Risperdal, both before and after January 28, 2003.

"Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended 'evolving standards of decency', thereby rising to the level of a constitutional tort.  The known risk of injury must be 'a strong likelihood, rather than a mere possibility'".  Brown v. Hughes, 894 F.2d 1535, 1537 (11th Cir. 1990) (quoting Estelle v. Gamble, 429 U.S. 97 (1976) and Edwards v. Gilbert, 867 F.2d 1271, 1276 (11th Cir. 1989)).  Herein, the plaintiff has failed to rebut the defendant's showing that he had no knowledge of a substantial likelihood of serious injury or harm to the plaintiff by virtue of his treatment plan, and that he reduced plaintiff's Risperdal in an attempt to stabilize the plaintiff's symptoms.  Defendant's affidavit at ¶ 37.  Cf. Greason, 891 F.2d 829 (Genuine issues of material fact existed as to whether reasonable person in position of prison psychiatrist would have known that care amounted to deliberate indifference, where psychiatrist met with prisoner plaintiff for a few minutes and abruptly discontinued anti-depression medication, without reviewing clinical file or conducting a mental status examination, and clinical file contained reports from other physicians stating that without anti-depression medications, prisoner posed substantial suicide

risk.).

Accordingly, it is the recommendation of the undersigned that the defendant's Motion for Summary Judgment be **GRANTED** and that the plaintiff's Motion for Summary Judgment be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 15th day of August, 2005.

    /s/ *Richard L. Hodge*
RICHARD L. HODGE
UNITED STATES MAGISTRATE JUDGE

asb